Plaintiffs sue the defendant for $1,421, together with legal interest thereon from judicial demand. As a basis for their demand, plaintiffs allege that Marcelite Banta Colligan, wife of defendant, now deceased, was a sister of Mrs. Lockwood, one of the plaintiffs; that Mrs. Lockwood, during the life of Mrs. Colligan, loaned to the said Mrs. Colligan four (4) oak dining chairs of the value of $2.75 each, and four (4) quilts of a value of $5 each, and which were never returned to her or paid for; that the said Mrs. Colligan and Mrs. Lockwood rented a safety deposit box at Louisiana National Bank, in which said box Mrs. Lockwood had the sum of $400 in cash at the time of the death of Mrs. Colligan. They further allege that the defendant, during the latter part of 1942 or the early part of 1943, entered the Armed Services of the United States, at which time his wife came to reside in the home of plaintiffs. They aver that on account of the close relationship between the two sisters, it was agreed that Mrs. Colligan would pay a reasonable sum for her board at the Lockwood residence, where she took three meals a day, such payment to be made after her husband's return; that in pursuance of said agreement, Mrs. Colligan resided with plaintiffs from Feb. 1, 1943, to Nov., 11, 1945 — 2 years and 9 months; that while no specific sum was agreed upon, they aver that $30 per month is a reasonable sum for such board, making a total of $990, which sum plaintiff J.M. Lockwood claims on quantum meruit.
They allege that Mrs. Colligan died on November 28, 1945; that on opening the bank box, there was found the sum of $680 in currency, of which sum the plaintiff Mrs. Lockwood claimed $400 as her own paraphernal or separate property; that the defendant accepted the succession of his wife purely, simply and unconditionally, thus making himself liable for the debts of Mrs. Colligan, principally the chairs and *Page 630 
quilts, or the value thereof, the "Board" of $990, and the $400 in currency.
The defendant appeared and filed an exception of vagueness, which exception was overruled. This exception is now abandoned. Thereafter, he filed a plea of prescription of one year, which plea was referred to the merits. Thereafter, defendant filed an exception of no right or cause of action, which exception was also referred to the merits. In answer, defendant admits his marriage to Marcelite Banta, a sister of Mrs. Lockwood, on September 3, 1938; admits that he lived with his wife, with the exception of his service with the armed forces, from that day to the date of her death on November 28, 1945; admits that he entered the armed forces on October 9, 1942; admits the opening of the bank box, the listing of the property found in the box, including the $680. He categorically denies the remainder of plaintiffs' allegations.
The trial of the case resulted in a judgment overruling the plea of prescription, and the exception of no right or cause of action, and in dismissing plaintiffs' suit. Plaintiffs have appealed.
The exception of no right or cause of action seems to be abandoned by the defendant, in fact, he does not urge it in this court. Defendant, however, has re-urged his plea of prescription. His plea is based on Article 3534 of the Revised Civil Code which fixes the prescriptive period of one year against the claim of "innkeepers and such others, on account of lodging and board which they furnish."
[1] It is clearly shown by the record that the plaintiffs were not engaged in the occupation of running a rooming house when Mrs. Colligan came to live with her sister on February 1, 1943. At that time the plaintiffs were living in a dilapidated two-story house. Plaintiffs were occupying this house with Mr. Lockwood's brother-in-law. They had the upstairs vacant and offered the decedent to come and live with them. It is true that later on, they did rent a room to an outsider. But the evidence does not show that they were furnishing board to any one, save the contested fact of furnishing board to decedent. This fact, admitting it to be true, does not make them furnishers of board as a trade or occupation. Defendant's contention is fully answered in the negative by the case of Galjour v. Succession of Galjour, 1 La. App. 734, wherein we held that under similar facts, the prescription of 10 years was applicable to such cases. The plea of prescription was correctly overruled.
The record discloses that Marcelite Banta, a sister of Mrs. Lockwood, married the defendant on September 3, 1938. Afterwards, the exact date not being shown, defendant acquired real property in a subdivision some three miles north from the business district of Baton Rouge, upon which they resided. The defendant was inducted into the armed forces of the United States on October 9, 1942. At that time, Mrs. Colligan was in the employ of J.C. Penny, a mercantile establishment on Third Street in the City of Baton Rouge. On account of the induction of defendant in the armed forces, Mrs. Colligan removed from the matrimonial domicile to the home of her brother and rented the matrimonial house. She then moved around the first of february, 1945, to the residence of plaintiffs on Louisiana Avenue, in the City of Baton Rouge, some four blocks from her work, wherein she resided until November 11, 1945, a few days prior to her husband's return from the service.
[2] As to the chairs and quilts, we have only the testimony of Mrs. Lockwood to the effect that she loaned to Mrs. Colligan dining room chairs which cost her $2.75 each and the chairs were new; that she loaned to Mrs. Colligan the quilts when she moved back to her home. Mr. Colligan positively states that the chairs and quilts were those of the community, they being owned by the Colligans when he was inducted in the service. He also states that the chairs and quilts were old when he returned. It is to be noted that other furniture was claimed as not belonging to the Colligans which furniture was returned either to plaintiffs or to Mrs. Lockwood's and Mrs. Colligan's brother. This fact tends to corroborate defendant's testimony that he was not claiming or keeping any furniture which did not belong to the marital community which formerly existed between *Page 631 
his deceased wife and himself. Suffice it to say that the district judge held that the plaintiffs had not borne the burden of proof. We find no error committed by him on that score.
As to the claim of Mrs. Lockwood that she had $400 out of the $680 found in the safety deposit box at the First National Bank, we find the facts relating to this safety deposit box to be that Mrs. Colligan rented this box with the privilege to Mrs. Lockwood to use the same, Mrs. Lockwood being furnished a key thereto. According to the testimony of Mrs. Lockwood, she had entrusted to Mrs. Colligan divers sums to be deposited in the box; that at one time, we presume sometimes near Mrs. Colligan's death, she had as much as $500 in the box. She requested that Mrs. Colligan withdraw therefrom $100 for the purpose of paying rent on the house occupied by the parties as the family home, the exact or proximate time prior to Mrs. Colligan's demise of such withdrawal not being shown, thus leaving, according to her testimony, the sum of $400 claimed by her. It is admitted by Mr. Colligan that the day following the funeral of Mrs. Colligan that Mrs. Lockwood informed him of the deposit box and her claim of $400. Mrs. Lockwood obtained an order to open the safety deposit box with the view of searching for a will and of taking an inventory of the box. Upon opening the box, there were found certain articles as belonging to Mrs. or Mr. Colligan such as War Savings Bonds, insurance certificate on the life of Mr. Colligan, receipts from J.C. Penny for "Thrift Fund", and an envelope dated 7-15-44, containing currency to the amount of $680. This envelope was a pay envelope of J.C. Penny showing the salary of Mrs. Collingan to be $36.20, net, for a two weeks' period. The currency thus found consisted of a $500 bill and bills of smaller denominations. Nothing in the box bore any earmark as belonging to Mrs. Lockwood. Thus we have only the lone testimony of Mrs. Lockwood that out of this sum she is entitled to $400. It is significant to note at this time that nowhere in her testimony does she state how the sum of $500 was deposited in this box, such as from time to time or as a whole. The testimony of Mr. Lockwood as to this sum is only such as was told to him by his wife and cannot be said to be a corroboration of her testimony.
The evidence shows that on April 27, 1944, Mrs. Lockwood sold to Mrs. Colligan, her undivided interest in a piece of real estate in Iberville Parish, Town of Plaquemine, for the sum of $300. It is to be noted, however, nowhere in her testimony does Mrs. Lockwood state that she entrusted this sum to her sister to be deposited in this savings box nor does she testify that she deposited this sum in the box herself. Her testimony is only to the effect that the $300 is part of the $400 claimed by her. This cannot be said to be in corroboration of her testimony that out of the sum found in the safety box, she had the amount claimed by her. To the contrary, Mrs. Lockwood admits that after her sale to Mrs. Colligan, Mrs. Colligan purchased the remaining undivided interests of her brothers in the property and thereafter sold the property for a cash consideration of $800. It is more logical to presume therefore that the amount thus found in the box to be the remainder of the consideration received by Mrs. Colligan than that any portion represents the $300 received by Mrs. Lockwood. Thus we do not have any corroboration of Mrs. Lockwood's testimony. To the contrary, we find facts which seem to destroy her contention. We will comment on the law later on in this opinion.
We now pass to plaintiffs' claim of $990. According to plaintiffs' testimony, after Mr. Colligan had been inducted and due to gasoline rationing, Mrs. Colligan found it expedient to rent her home and to come to live with the Lockwoods. While plaintiffs were fixing the place wherein they resided, Mrs. Colligan stayed with her brother and thereafter she moved with plaintiffs around the first of February, 1943, and resided there until November 11, 1945. It is testified that on account of Mrs. Colligan not having enough money, it was agreed that plaintiffs would furnish board to Mrs. Colligan, three meals a day, and upon the return of her husband from service, they, the Colligans, would settle with the plaintiffs for such board. Mrs. Colligan occupied *Page 632 
an upstairs room and for this privilege, Mrs. Collingan assumed and did pay the sum of $10 per month to help defray the 'phone, lights, water and gas bills. They testified that the furnishing of 3 meals a day was well worth the sum of a dollar a day. They testified that they so furnished these meals. However, they admit that there were in the hall, adjoining Mrs. Colligan's room, a small gas stove, a refrigerator, a small dining room table and chairs which Mrs. Colligan used occasionally to serve coffee and "snacks" to her guests.
In contradiction of this testimony, we find in the record that Mrs. Colligan was employed by J.C. Penny up to and including July 15, 1944, at a net bi-weekly wage of $36.20, was receiving an allowance from her husband of $50 per month from his induction into service to the time of his discharge, and was receiving a monthly rent, the amount not divulged by the record, from the matrimonial home, thus showing that she was not a subject of charity, or unable to pay for her board or meals.
Another significant fact which tends to contradict plaintiffs' testimony that they did furnish the decedent three meals a day from the time decedent came to reside with plaintiffs until she moved therefrom is the fact that there is in the record the testimony of witnesses to the effect that Mrs. Colligan, from time to time, bought her own groceries and prepared her own meals on this small gas range, used the small table and chairs and the refrigerator notwithstanding plaintiffs' denial of such use for this purpose. We are not impressed with plaintiffs' testimony that the gas range was only occasionally used for coffee-making and in preparing "snacks" for occasional friends, and the use of the refrigerator only in order to preserve it.
Another significant fact is that, in the handwriting of Mrs. Lockwood, executed by Mrs. Lockwood, receipts clearly show that Mrs. Colligan paid room rent rather than representing cost of utilities.
It is to be noted that this claim of board or meals was only mentioned after Mr. Colligan had refused to recognize plaintiffs' claim of $400. The defendant had returned from service for more than a week.
[3] It must be remembered that the lips of Mrs. Colligan are now forever sealed. Such claims should be substantiated by stronger evidence than we find in this record. Although Act No. 207 of 1906, is inapplicable to the facts in this case, we feel that the testimony of plaintiffs is not sufficient to grant judgment. There should be facts and circumstances to establish the debt, which, according to the record, are utterly lacking.
Since plaintiffs rely on a verbal agreement to pay board on the part of Mrs. Colligan, if and when her husband would return from service, we are of the opinion that Article 2277 of our Revised Civil Code is applicable to this case. That Article reads as follows: "All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value,must be proved at least by one credible witness, and othercorroborative circumstances." (Italics ours.) Since the claim of plaintiffs exceeds $500, admitting for the mere sake of argument that plaintiffs are credible witnesses, in the intendment of the article, yet the fact remains that there are no corroborative circumstances warranting an award to plaintiffs.
In the language of the trial judge: "The plaintiffs, under the law, carried the burden of proving every item of the alleged indebtedness. Here we have only their word as to the ownership of the $400.00, the agreement to pay board, the ownership of the chairs and the quilts. It may be that their testimony is true and correct. However, in our opinion, it is insufficient to warrant the Court in awarding judgment against this defendant, particularly in view of the circumstances referred to tending to impeach their testimony. Courts cannot in dealing with the rights of litigants indulge in guess work."
For these reasons assigned, the judgment appealed from is affirmed. *Page 633